## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Stephan S. Wilson,

                Petitioner,              Case Number: 21-cv-11775
                                        Honorable Denise Page Hood

v.

Catherine Bauman,

                Respondent.

_____/

### OPINION AND ORDER DENYING HABEAS CORPUS
### PETITION, DENYING CERTIFICATE OF APPEALABILITY, AND
### GRANTING LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

Petitioner Stephan S. Wilson has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. At the time he filed his petition, Wilson was incarcerated at the Newberry Correctional Facility in Newberry, Michigan. He has since been released to a term of parole. He challenges his convictions for five counts of third-degree criminal sexual conduct, and one count of fourth-degree criminal sexual conduct. Wilson raises five claims for relief.

For the reasons set forth below, the Court denies the petition and declines to issue a certificate of appealability. The Court grants Petitioner leave to proceed *in forma pauperis* on appeal.

## I. Background

Following a jury trial in Crawford County Circuit Court, Wilson was convicted of five counts of third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d(1)(a) (sexual penetration with person at least 13 and under 16), and one count of fourth-degree criminal sexual conduct, Mich. Comp. Laws § 750.520e(1)(a) (sexual contact with person at least 13 and under 16 by actor 5 or more years older). He was sentenced to concurrent prison terms of 7 to 15 years for the third-degree criminal sexual conduct convictions and 16 months to 2 years for the fourth-degree criminal sexual conduct conviction.

Wilson filed a motion for a new trial on the grounds that the prosecutor had not disclosed potentially exculpatory evidence from a victim impact statement and that there was newly discovered evidence of the victim's counseling records. The trial court denied the motion in two separate opinions. (*See* ECF No. 23-3, 23-4.)

Wilson filed an appeal by right in the Michigan Court of Appeals. The Michigan Court of Appeals set forth the following relevant facts:

> This case arises from contacts between defendant and the minor victim, AH, in August 2013, when AH was 15 years old and defendant was 36 years old. Defendant was one of AH's supervisors at the farm where she worked. AH testified that defendant asked her to go camping. According to AH, defendant said that some of his family members would come as well and that AH could share a tent with his nieces. AH and her grandmother agreed to go camping with defendant. After AH's grandmother went to sleep in her own cabin, defendant told AH that his family was not coming, but that he and AH could share a tent.

2

AH testified that she woke up when defendant got on her air mattress. AH told defendant to leave her alone, but defendant rolled AH over to face him and started rubbing her legs. AH testified that she repeatedly told defendant to leave her alone, but that his touching kept escalating. AH testified that defendant performed cunnilingus on her and penetrated her vagina with his fingers and with his penis. AH testified that later that same night, defendant touched her breasts under her sweatshirt and again penetrated her vagina with his fingers and with his penis. AH also testified about another incident, not charged in this case, in which defendant picked AH up on a motorcycle, took her to his apartment, and there penetrated her vagina with his penis.

In the weeks following the assaults, AH attempted to avoid defendant despite his repeated attempts to contact her. AH testified that she first reported the assault to her friend, AK, in November. AK testified that after AH reported the assault, AK contacted a teacher, Milline Heslop. Heslop testified that after AK told her what AH reported, Heslop spoke to AH and told her that she needed to talk to the principal, Delwin Garcia. AH testified that she reported the incident to Garcia. Garcia testified that, since he is a mandatory reporter, after AH began telling him about the assault, he called the authorities and brought in the female vice principal, Kassie Norcross, to speak with AH. Norcross testified that she spoke to AH about the incident and that AH showed her messages from defendant on social media. Lorene Henderson, AH's grandmother, testified that when they went camping, it was her understanding that AH would share a cabin with defendant's nieces. Henderson testified that she was very upset the next day when she learned that defendant and AH had shared a tent, but that AH denied that anything happened between AH and defendant. Tonya Baker, a registered nurse, testified that AH's medical records indicated that AH reported that a man assaulted her while they were camping; that the patient fell asleep and awoke to the man asking to lie next to her; that after the patient refused, the man inserted his penis into her vagina; and that the same thing happened again the next night.

Michigan State Police Trooper Andrew Sysko responded to Garcia's call and interviewed AH at school. Sysko testified about AH's report in detail. His testimony largely matched AH's testimony. However,

> Sysko also testified that originally his report stated that the assault occurred in April 2013, not August 2013, and that originally his report stated that the first two assaults occurred on consecutive nights, not on the same night. Sysko also testified about his conversations with Garcia, AK, and SW (another student who worked with AH and defendant).

*People v. Wilson*, No. 336796, 2018 WL 2419050, at *1-2 (Mich. Ct. App. May 29, 2018).  These facts are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1).  *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

The Michigan Court of Appeals affirmed Wilson's conviction and sentence. *Wilson,* 2019 WL 7206044, at *1.  Wilson sought and was denied leave to appeal in the Michigan Supreme Court.  *People v. Wilson*, 503 Mich. 998 (Mich. April 2, 2019).

Wilson then returned to the trial court and filed a motion for relief from judgment.  The trial court denied the motion.  *See* 9/20/2019 Ord. (ECF No. 13-4). The Michigan Court of Appeals denied Wilson leave to appeal, *People v. Wilson*, No. 351896 (Mich. Ct. App. Apr. 9, 2020), as did the Michigan Supreme Court. *People v. Wilson*, 507 Mich. 1003 (2021).

Wilson then filed this habeas petition.  He seeks relief on these claims:

I.   Trial counsel was ineffective for failure to object to hearsay testimony until it was too late, and for failing to more for a mistral.

II. Petitioner's fundamental right to fair trial was denied because of prosecutorial misconduct.

4

III. Petitioner's fundamental right to a fair trial was violated due to failure to enforce a pre-trial order.[1]

IV. Trial counsel was ineffective for failure to present expert testimony by Dr. Thompson.

V. Petitioner was denied his Fifth and Fourteenth Amendment constitutional rights of due process and his Sixth Amendment right to effective assistance of appellate counsel.

Respondent has filed an answer in opposition. (ECF No. 12.) Wilson then filed a supplemental petition raising this additional claim:

VI. Petitioner was denied his Fifth and Fourteenth Amendment constitutional rights of due process and his Sixth Amendment right to effective assistance of appellate counsel when appellate counsel failed to raise on direct appeal a clear *Brady* violation.

Respondent filed a supplemental answer in opposition. (ECF No. 24.) Wilson filed a reply brief. (ECF No. 25.)

## II. Legal Standard

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of

---

[1] Wilson has voluntarily abandoned this issue and it will not be addressed by the Court. (*See* ECF No. 25, PageID.2092.)

the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 548 U.S. 122, 124-25 (2018) (quoting 28 U.S.C. § 2254(d)).  The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.  Discussion

### A.  Ineffective Assistance of Trial Counsel (Claim I)

In his first claim for habeas relief, Wilson argues that trial court's failure to object to hearsay testimony and to move for a mistrial based on the testimony was ineffective.

On habeas corpus review, to prevail on an ineffective assistance of counsel claim, Wilson must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *See id.* at 687.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).  In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so."  *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).  "[T]he question is not whether counsel's

actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Michigan Court of Appeals denied Wilson's claim in a thorough, well-reasoned opinion:

> Defendant bases his claim on defense counsel's failure to object to hearsay testimony from Sysko, AK, Heslop, and Norcross, as well as his failure to request a mistrial based on this testimony. ...
>
> ***
>
> Sysko's testimony that Garcia told him that AH disclosed that defendant sexually assaulted her, and that Garcia relayed AH's "synopsis" of what happened, was not hearsay because it was not offered to prove the truth of the matter asserted; rather, it served to explain why Sysko interviewed AH. "[A] statement offered to show why police officers acted as they did is not hearsay." *People v. Chambers*, 277 Mich. App. 1, 11; 742 N.W.2d 610 (2007). Since objection to this testimony would have been futile, counsel cannot be considered ineffective for his failure to object. *People v. Ericksen*, 288 Mich. App. 192, 201; 793 N.W.2d 120 (2010).
>
> Additionally, defendant's argument that testimony from AK, Heslop, and Norcross was inadmissible hearsay has no merit. Considering the testimony as a whole, it is apparent that none of these statements included any detail about the assaults. Instead, these statements were offered to explain why each respective witness took the steps that she did following AH's report, not to prove that AH was assaulted. Since these statements were not offered for the truth of the matter asserted, they were not hearsay, ... and because objection to this testimony would have been futile, counsel cannot be considered ineffective for his failure to object. „.
>
> However, Sysko's testimony about what AK and SW reported to him was arguably inadmissible hearsay because it was not relevant to why Sysko took the actions he did. As to SW's testimony, though, defense counsel objected, and the court instructed the jurors to consider

Sysko's testimony for the limited purpose of understanding why he took the actions that he did. Jurors are presumed to follow instructions from the court. ... However, the limiting instruction did not address Sysko's testimony about what AK told him.

Regardless of the admissibility of testimony from AK, Heslop, and Norcross, and testimony from Sysko about what Garcia and AK reported to him, defendant has failed to overcome the presumption that failing to object constituted sound trial strategy. None of this testimony revealed any details about the assaults or reinforced AH's testimony about how the assaults happened. Thus, defense counsel may have chosen to stay silent so as not to draw attention to this testimony. ... Therefore, defendant has failed to establish that defense counsel's conduct fell below an objective standard of reasonableness when he failed to object to these portions of the testimony.

However, Sysko's testimony relaying what AH told him in the interview was much more extensive than any other hearsay testimony. Sysko went into considerable detail about what AH reported to him surrounding all three assaults in a manner that may have served to corroborate AH's testimony. While there were some inconsistencies between Sysko's report and AH's testimony regarding whether the first two assaults happened in April or August and whether they happened on one night or on two consecutive nights, those are minor inconsistencies when compared to the consistency of other details corroborating AH's testimony about the assaults themselves. Defense counsel highlighted these inconsistencies in his closing argument and attempted to impeach Sysko's credibility by eliciting testimony from Sysko that he did not follow the protocol required for forensic interviewing and that the purpose behind the protocol is to ensure that the interviewee is being truthful. However, given the small inconsistencies compared to the detail provided by Sysko in his testimony, "there was no basis for defense counsel to have reasonably concluded that he could obtain a tactical advantage by allowing the inadmissible hearsay testimony in order to ferret out inconsistencies." *Shaw*, 315 Mich. App. at 676–677. ... [D]efense counsel's failure to object to Sysko's detailed hearsay testimony about AH's account of the assaults was not objectively reasonable.

Nevertheless, even if defense counsel's failure to object fell below an objective standard of reasonableness for all of the above testimony, there is not a reasonable probability that the outcome of the trial would have been different had defense counsel objected. *Shaw*, 315 Mich. App. at 677. None of the testimony from AK, Heslop, or Norcross included details about the assaults themselves, so the testimony did not serve to provide a more complete account of the alleged crimes than did AH's testimony alone. Similarly, none of Sysko's testimony about what AK, Garcia, and SW told him included details about the assaults. Additionally, although AH's credibility was a central issue at trial, none of the complained-of testimony expressed an opinion about AH's truthfulness.

Turning to Sysko's more problematic hearsay testimony about what AH reported to him, defendant has failed to establish that, had defense counsel objected, there is a reasonable probability that the result of the trial would have been different. Sysko's testimony largely mirrored that of AH's testimony and added no new information to AH's story. AH also testified and was thoroughly cross-examined. Defendant argues that Sysko's testimony was outcome-determinative because, in addition to confirming the details of AH's testimony, Sysko vouched for AH's credibility when he testified that he told her to tell the truth. However, Sysko also testified that every child is different in terms of truthfulness, and he admitted that he did not follow forensic protocol designed to ensure truthfulness of a child's report. Sysko did not express an opinion about AH's credibility; nor did he provide any detail about how he did or did not corroborate or confirm that AH was telling the truth.

Moreover, considerable circumstantial evidence was presented in addition to AH's direct account of the assaults. Henderson testified that AH did in fact share a tent with defendant alone. Multiple witnesses expressed skepticism about the relationship between defendant and AH, and multiple witnesses testified that they saw AH on the back of defendant's motorcycle on the date of the third assault. Finally, several condemning messages exchanged between defendant and AH on social media were admitted into evidence. The messages did not have the tone of a mentor concerned about his mentee; rather, they had the tone of a scorned suitor desperately trying to regain attention. While these pieces of evidence are not direct evidence that

defendant sexually assaulted AH, nor incriminating in and of themselves, they do make it more likely that defendant had the opportunity to sexually assault AH and did in fact sexually assault AH.

*Wilson*, 2018 WL 2419050, at \*2-5.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the Court must defer to the state court's resolution of its own rules of evidence. *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005). This is so "even when the petitioner is not seeking habeas relief on the state court evidentiary determination at issue." *Brooks v. Anderson*, 292 F. App'x 431, 437 (6th Cir. 2008). Because the Court may not substitute its judgment for that of the state court regarding which of the challenged testimony is hearsay, the Court addresses counsel's performance only with respect to the testimony the state court held was arguably inadmissible hearsay -- Sysko's testimony about what AK, SW, and AH told him.

Defense counsel objected to Sysko's testimony about what SW told him and the trial court gave the jury a limiting instruction. So counsel was not ineffective in that regard. The state court's holding that counsel's decision not to object to Sysko's testimony about what AK reported to him was a reasonable application of *Strickland* because this testimony did not provide detailed accounts of the assault or substantiate AH's testimony.

That leaves Sysko's testimony about what AH told him.  The state court reasonably concluded that defense counsel's failure to object to this testimony satisfied *Strickland*'s first prong.  However, Wilson has not shown a reasonable probability that, had his attorney objected and the evidence been excluded, the result of the proceeding would have been different.  Sysko's testimony about what AH told him was cumulative to AH's own testimony and added no new details to her account.  And, as the Michigan Court of Appeals noted, strong circumstantial evidence corroborated AH's testimony.  The Court, therefore, concludes that the state court's finding that Wilson failed to satisfy the *Strickland* prejudice prong was not an unreasonable application of that standard.

## B.  Procedural Default

### 1.  Claims Not Raised on Direct Appeal

Wilson's second claim alleges that the prosecutor committed misconduct by knowingly presenting false testimony; and, in his fourth claim, Wilson contends that defense counsel was ineffective for failing to present expert testimony. Respondent argues that these claims are procedurally defaulted.  Wilson asserts his appellate attorney's ineffectiveness excuses his default.

The Court finds these claims procedurally defaulted.  Wilson has not established cause and prejudice to excuse the default, nor has he shown that failure to consider the claim would work a manifest injustice.  Moreover, even if the

claims were not defaulted, habeas relief would be denied because the claims are meritless.

Federal habeas relief is precluded on claims that were not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (internal quotations omitted).

Wilson first raised these issues in a motion for relief from judgment. The Michigan Supreme Court and Michigan Court of Appeals denied Wilson leave to appeal from the denial of his motion in summary orders. These brief form orders are unexplained orders so the Court must "look to the last reasoned state court opinion to determine the basis for the state court's rejection of [the] claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

The last reasoned state court opinion is the trial court's opinion denying Petitioner's motion for relief from judgment. The trial court specifically relied on Michigan Court Rule 6.508(D)(3) to deny Wilson's claims and found no cause or

prejudice to excuse the default and no credible showing of actual innocence.[2]  (*See* ECF No. 10-15, PageID.758-60.)   The Sixth Circuit recognizes Mich. Ct. Rule 6.508(D)(3) as an independent and adequate state ground sufficient to invoke procedural default.  *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).  Wilson's claim is procedurally defaulted unless he can establish either (1) cause for the default and prejudice from the alleged constitutional violation, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To establish "cause", a petitioner must "'show that some objective factor external to the defense impeded counsel's efforts to raise a claim in the state courts.'" *Davila v. Davis*, 582 U.S. 521, 528 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  "A factor is external to the defense if it "cannot fairly be attributed to" the prisoner." *Id.* (quoting *Coleman,* 501 U.S. at 753).

Wilson alleges his trial and appellate attorneys' ineffectiveness establishes cause to excuse his default.  Ineffective assistance of counsel may constitute cause excusing a procedural default.  *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013).  A petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 754

---

[2] Although the state court did not specifically cite Mich. Ct. Rule 6.508(D)(3), the state court quoted language from that subsection and clearly relied on its procedural bar to deny relief.

(1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The process of "'winnowing out weaker arguments on appeal'" is "the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.'" *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.

Wilson fails to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that Wilson raised for the first time in his motion for relief from judgment. Appellate counsel filed a well-constructed brief which raised the ineffective assistance of counsel claim addressed above. Wilson raises this as the first claim in his petition.

He has not shown that appellate counsel's strategy in presenting this claim and not raising other claims was deficient or unreasonable.

In addition, neither of the omitted claims is clearly stronger than the claim presented by appellate counsel.  First, defense counsel explained on the record his reasons for declining to call the defense expert witness.  Counsel considered how the trial had progressed and recognized that presenting an expert witness was not without its risks and, after technical difficulties prevented the expert from testifying remotely, determined that the expert was not necessary to the defense.  Wilson fails to overcome the presumption that this was reasonable strategy.

Second, while the "deliberate deception of court and jury by the presentation of testimony known to be perjured" violates a defendant's due process rights, *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (per curiam), "mere inconsistencies" in the testimony are not enough.  *United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989).  A defendant must prove that the testimony was "indisputably false."  *See id.* at 822-23.  Wilson fails to show that any inconsistencies were the result of perjury rather than confusion or faulty memories.  He further fails to show that any reports or exhibits were knowingly altered or falsified.

Wilson, therefore, has failed to establish cause for his procedural default of failing to raise these claims on direct review.  *See McMeans v. Brigano*, 228 F.3d

674, 682-83 (6th Cir. 2000).   Thus, these claims are procedurally defaulted and barred from review unless Wilson can establish that a constitutional error resulted in a fundamental miscarriage of justice.   *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).   The Supreme Court has tied the miscarriage of justice exception to procedural default to a petitioner's innocence.   *Id*.   To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt."   *Id.* at 327.   Wilson fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty.   Therefore, these claims are procedurally defaulted.

### 2.  Unexhausted Claim

Finally, Wilson claims that his appellate attorney was ineffective for failing to raise a claim on direct appeal alleging a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).   Respondent argues that this claim is procedurally defaulted. The Court finds that the claim is unexhausted and, because no avenue remains for state court exhaustion, the claim is procedurally defaulted.

A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).   State prisoners in Michigan

must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather v. Rees*, 822 F.2d 1418, 1420, n.3 (6th Cir. 1987).

Wilson raised this claim in a motion for new trial filed in the trial court before filing his direct appeal. He has not raised the claim in the Michigan Court of Appeals or Michigan Supreme Court. Wilson can no longer exhaust this claim because he already filed a motion for relief from judgment in the state trial court and does not argue that his claims fall within the narrow exception to the prohibition against filing successive motions for relief from judgment in state court. *See* Mich. Ct. R. 6.502(G). Where a petitioner "fails to present his claims to the state courts and ... is barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995). Instead, the claim is procedurally defaulted and will not be considered unless he can show cause and prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. *Id.*

Wilson asserts ineffective assistance of appellate counsel as cause to excuse his default. While ineffective assistance of appellate counsel might explain

Wilson's failure to raise this claim on direct appeal, it does not excuse Wilson's own failure to fully present these claims on state court collateral review. *See Gadomski v. Renico*, 258 F. App'x 781, 784 (6th Cir. 2007) (explaining that ineffective assistance of counsel on collateral review does not establish cause because "there is no right under the federal Constitution to the effective assistance of collateral counsel"); *see also Abdus-Samad v. Bell*, 420 F.3d 614, 632 (6th Cir. 2005). Wilson therefore cannot attribute his failure to raise this claim in his motion for relief from.

As discussed above, Wilson has not made a credible showing of actual innocence which would allow consideration of his claim under the fundamental miscarriage of justice exception to procedural default. Accordingly, he may not obtain habeas relief for this claim.

## IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

The Court grants Wilson leave to appeal in forma pauperis because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## V.  Conclusion

For the reasons set forth, the Court DENIES the petition for writ of habeas corpus and DENIES a certificate of appealability.  If he chooses to appeal this decision, Petitioner may proceed *in forma pauperis*.

SO ORDERED.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

Dated:  September 30, 2024

20